Vardaman C. Wilcox et al., Appellants, *v.* Registrar of Property of San Juan (First-Section), Respondent.

No. 1198.  Submitted November 4, 1947.—Decided June 18, 1947.

*Heriberto Torres Solá* for appellants. The registrar appeared by brief.

MR. JUSTICE SNYDER delivered the opinion of the Court.

Elias B. Wilcox and his wife, Vardaman C. Wilcox, acquired from William F. Lippitt 23 parcels of land in payment of a mortgage loan. Each parcel contained one or more lots. Parcel "J" consisted of 6 lots, one of which was Lot 82, the land involved herein. The deed of conveyance, to which a copy of the plan of urbanization of the 23 parcels was attached, was recorded in favor of Wilcox and his wife.

Wilcox and his wife, as owners of these parcels, agreed to a plan to dispose of said lots, whereby they were to sell them, for a stipulated price, to the persons in possession thereof as lessees who had built houses thereon. This plan was followed until the death of Elías B. Wilcox on October 27, 1942.

Wilcox was survived by his wife and his two daughters, Adah Louise and Mary Winifred. In his will Wilcox named his two daughters as his sole and universal heirs. Mary Winifred died in California on July 28, 1943, leaving two children, Brian Arthur and Mary Winifred O'Neill Wilcox.

The estate of Wilcox went to his surviving spouse and two daughters in the proportion of ½ share for the wife and ¼ share for each of the daughters. Brian Arthur and Mary Winifred O' Neill, the children of Mary Winifred Wilcox, were declared her sole heirs, her husband having waived all his rights in their favor. No partition of the estate seems to have been made up to the date on which the lot involved herein was conveyed to Octavio Ismael Dávila and wife.

Judicial administration proceedings were brought in the District Court of San Juan in connection with the properties Mary Winifred Wilcox left in Puerto Rico and Vardaman C. Wilcox was appointed administratrix. Thereafter, the latter filed a petition requesting judicial authorization to execute deeds of sale in the name of the minors, Brian Arthur and

Mary Winifred O'Neill, as to certain lots—among them Lot 82 here involved—with reference to the ¼ share of the minors in said lots, and to cancel a mortgage constituted in favor of Elias B. Wilcox and wife securing deferred payments of the purchase price of a lot sold by Elias B. Wilcox, also as to the ¼ share of said minors.

The petition alleged the plan of Wilcox to sell the lots; that from the date Wilcox acquired the lots to the date of his death, he and his wife had sold 17 lots which had been recorded in the Registry; that after Wilcox's death, the surviving spouse and her two daughters, Adah Louise and Mary Winifred, had accepted the sale agreements entered into by Wilcox and had agreed to carry out the said plan as to the remaining lots.

The petition alleged that there are eleven lots among those that Wilcox had agreed to sell to the lessees thereof having buildings thereon; that the latter had agreed to buy the said lots from Wilcox; that the deeds of sale thereof are pending execution; and that one of the lots is Lot 82 involved herein.

The petition also alleged that the purchase price of the 35 lots referred to in the petition were fixed by Elias B. Wilcox and his wife; that those lots were transmitted by inheritance to Mary Winifred and Adah Louise Wilcox subject to Wilcox's obligation to sell them for that price, which obligation was transmitted to Brian Arthur and Mary Winifred O'Neill Wilcox as regards their ¼ share inherited from their mother Mary Winifred Wilcox; that the prices so fixed were reasonable and had been accepted by the surviving spouse Vardaman C. Wilcox, as to her ½ share of community property, and by Adah Louise as to her ¼ share; that in the liquidation of the inheritance tax of Elias B. Wilcox, the Treasurer reappraised said lots and those prices exceeded the official valuation of the lots for inheritance tax purposes; and that execution of the deeds of sales as to the

¼ share of the minors in the lots is necessary, convenient and beneficial to the interests of the minors.

The court held that the allegations of the petition had been established and ordered the administratrix to execute deeds of sale of Lots 1 to 35, as to the ¼ undivided share Mary Winifred Wilcox owned in said lots, in favor of the persons stated in the petition having buildings thereon, or to their successors in interest, after payment of the balance due on the purchase price of said lots, and if any of these persons desisted, or wished not to buy, the order authorized the administratrix to sell the lots at a public sale for a price not less than that fixed in the petition. The order recites that Lot 82 had been sold by Wilcox to Angel Elías for the agreed price of $300, which had been paid in full.

Pursuant to this judicial authorization, the administratrix executed a deed of sale of Lot No. 82 to Dávila and wife, who as will be hereinafter noted are the successors in interest of Elías. The Registrar refused recordation of the deed. His first ground was that the appellants had not obtained approval of the Planning, Urbanizing and Zoning Board for the segregation of Lot 82.

The Registrar originally contended that when Wilcox and his wife made the subdivision prior to the effective date of the Planning, Urbanizing and Zoning Act, they consolidated Lot 82, sold herein to Dávila, with other lots to form a separate property; that Lot 82 is now being segregated therefrom; and that since the said segregation is taking place after the effective date of the Act, approved thereof by the Board is a prerequisite to recordation.

Thereafter, by stipulation, the Registrar conceded that Lot 82 was never consolidated with the lots referred to in his brief; that Lot 82 is a part of another lot of land formed by this lot and four others, consisting of 1128.90 square meters; that this lot is part of property number 4,521, recorded at the back of folio 37, volume 154 of Santurce (North Sec-

tion) ; and that Lot 82 does not appear to have been consolidated with another property or recorded as a separate property.

Lot 82 is identified in the order of the district court in the judicial authorization proceedings in the first Whereas clause as No. 2. It is also identified in the fifth Whereas clause as having been sold to Angel Elías for $300, with the purchase price already paid. Lot 82 is described in the deed of sale to Dávila in the same manner as in the order of court. The deed recites that Lot 82 is one lot of a group described as No. 10 in another deed of June 5, 1943, recorded in the Registry in volume 154 of Santurce (North Section), at the back of folio 37, property No. 4521, record 17. And Lot 82 appears in the urbanization plan made in 1925, which was attached to the deed of conveyance to Wilcox and wife and recorded therewith.

It is true that Lot 82 forms a part of a lot of land made up of Lot 82 and four other lots. But Lot 82 undeniably appears in the original urbanization plan, which was recorded with the original deed of conveyance to Elias B. Wilcox and wife, as an individual unit; a house was built thereon prior to the effective date of the Act; and the subsequent conveyances thereof treat Lot 82 as a separate unit in accordance with the original plan of urbanization. In short, the subdivision creating Lot 82 was made long before the effective date of the Act, and it was not being made for the first time by the deed to Dávila sought to be recorded herein. Under those circumstances, Dávila was not required to obtain the approval of the Board before this deed could be recorded. *Matos* v. *Planning, Urbanizing and Zoning Board,* 66 P.R.R. 417. The first ground of the Registrar therefore cannot be sustained.

■ The second ground of the Registrar relates solely to his refusal to record the deed of conveyance to Dávila insofar as the deed conveys the ¼ share of Lot No. 82 belonging to the minors, Brian Arthur and Mary Winifred O'Neill Wilcox.

The Registrar concedes that in granting authority to sell this ¼ share, the order of court recites that Wilcox and his wife had agreed to sell various lots, including Lot 82. But the Registrar argues that complementary documents presented to him show that this did not occur but that instead the sale of Lot 82 actually took place after the death of Wilcox and his daughter, Mary Winifred, who was survived by her minor children, Brian Arthur and Mary Winifred O'Neill; that the sale of Lot 82 was therefore made by a *sucesión* of which these minors were members; and that accordingly the district court lacked authority to order the sale of the ¼ share of the minors in Lot 82, except by public sale pursuant to § 579 of the Code of Civil Procedure or § 159 of the Civil Code, in which event there must be compliance with §§ 614–16 of the Code of Civil Procedure. In support of his position, the Registrar cites *Burset* v. *Registrar,* 49 P.R.R. 47, and *Aponte* v. *Registrar,* 56 P.R.R. 801.

The fundamental problem here therefore is to determine whether the complementary documents contradict the finding of the court that Elías B. Wilcox and wife, or, after the former's death, his surviving spouse and his two daughters, had contracted to sell Lot No. 82 to Angel Elías for $300. In either event, the successors in interest of Wilcox (his wife and two daughters) and of Mary Winifred Wilcox (her two minor children) were bound by the agreement and were therefore obligated to execute a deed of sale. In so far as the minors involved were concerned, the only additional requirement under those circumstances was the judicial authorization, which was granted here, to execute the deed. See *Ex parte Sotomayor,* 24 P.R.R. 172; *Avilés* v. *Registrar,* 19 P.R.R. 345; *Monrozeau* v. *Amador,* 40 P.R.R. 124; *Menéndez* v. *Registrar,* 13 P.R.R. 173; *Maya* v. *Registrar, ante,* p. 333. But if, contrary to the finding of the court, there was no such prior agreement, and the agreement and sale pursuant thereto were made by the *sucesión* of which the minors

were members, the contention of the Registrar as to the applicability of §§ 614–16 of the Code of Civil Procedure to this case would seem to be sound.

The complementary documents on which the Registrar relies are (1) a deed of March 31, 1943, whereby Ramón Fernández and his wife sold and conveyed to Angel Elías and wife a house "located on a lot of the *sucesión* of E. B. Wilcox"; (2) a deed of May 15, 1944, whereby Angel Elías and wife sold to Santiago Roldán the same house "located on a lot of the *sucesión* of E. B. Wilcox"; (3) a deed of April 9, 1945, whereby Roldán sold to the appellant Dávila the house "on a lot purchased from the *sucesión* of E. B. Wilcox, now belonging to Roldán, the execution of the deed of sale being pending."

But it is necessary to examine these complementary documents more carefully. The aforesaid statement in the last deed as to ownership appears in the description of the property. However, in the recital in the deed as to the title to the lot, the deed says: "The lot on which this house is built was purchased from the *sucesión* of Wilcox by Angel Elías and Beatriz Peña, prior owners of the house described above, and by a document dated April 2, 1945, they assigned all their rights to said lot to Roldán, present owner thereof." And when the deed recites what is actually being conveyed therein, it provides that "Santiago Roldán sells and Octavio Ismael Dávila Rodríguez purchases the house above described, together with all the rights to said lot . . ."

It therefore seems plain that Roldán did not acquire Lot 82 from the *sucesión* of Wilcox. Rather we are satisfied, as was the district court, that there was an agreement for the purchase of Lot 82 between Elías and either Wilcox or his survivors prior to the date the interest of the minors arose, and that Elías made a sufficient transfer of his rights therein to Roldán and Roldán to Dávila. Since the *sucesión*

of which the minors were members were bound by the prior agreement of predecessors in interest to convey the lot at the agreed price, Dávila was entitled to execution of the deed herein conveying Lot 82 as authorized by the order of court.

■ Moreover, we are far from satisfied that the Registrar was entitled in this case to dispute the validity of the order of court. When the "district court renders a final order, the Registrar must accept it as correct and sufficient if the court had jurisdiction of the subject matter and *the procedure followed was the one prescribed by law.*" *Herrero* v. *Registrar,* 63 P.R.R. 681, 684; *Valiente* v. *Registrar,* 63 P.R.R. 143; *Santos* v. *Registrar,* 64 P.R.R. 762. While the Registrar contends here that he need not accept the order of court because the procedure prescribed by §§ 614–16 of the Code of Civil Procedure was not followed, those sections rather than the procedure followed here apply only if we accept the Registrar's version of the facts rather than the facts as found by the district court. The Registrar cannot substitute his judgment of the facts for that of the district court and then predicate his argument as to what procedure must be followed in a particular case on the facts as he finds them rather than as adjudicated by the district court.

■ We note that the Registrar also contends that the lot must first be recorded in the name of Roldán, in order thereafter to record the deed of sale to Dávila. Section 20, Mortgage Law. But only the right to a conveyance was sold to Elías. He paid the purchase price but never obtained a deed due to the death of Mary Winifred and the subsequent judicial proceedings in connection with her death. Roldán likewise obtained a right to a deed but no deed. The first deed for Lot 82 was therefore the deed herein, which was executed in behalf of Dávila, who had succeeded to the right thereto of his predecessors in interest. The deed to Dávila could therefore be properly recorded in the name of the latter without first recording one in the name of Roldán.

The ruling of the Registrar will be reversed and he will be directed to record the deed involved herein free and clear of defects.